# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-0664
Filed July 22, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,
v.
**Anthony Cotner Jr.,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Johnson County,
The Honorable Chad Kepros, Judge.

———————————

**AFFIRMED**

———————————

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson
(argued), Assistant Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Adam Kenworthy (argued), Assistant
Attorney General, attorneys for appellee.

———————————

Heard at oral argument
by Greer, P.J., and Buller and Langholz, JJ.
Opinion by Greer, P.J.

1

**GREER, Presiding Judge.**

Anthony Cotner Jr. appeals his conviction for sexual abuse in the second degree, a class "B" felony, in violation of Iowa Code sections 709.1 and 709.3(1)(a) (2023). He was sentenced to an indeterminate term of incarceration not to exceed twenty-five years, and he is ineligible for parole until he serves seventy percent of his sentence.

On appeal, Cotner argues that the district court erred in excluding his testimony about the victim's statements on hearsay grounds. Cotner contends that the statements should not have been considered hearsay or that a hearsay exception applied. He also argues the exclusion of this testimony limited his ability to present a consent defense and allowed the State to invite prejudicial error into the proceedings. The State asserts that Cotner failed to explain on the record whether any exceptions to the hearsay rule applied and thereby failed to preserve error, and he did not preserve error on his constitutional challenges. Further, the State contends that the district court properly prohibited the admission of the alleged statements because they were hearsay, and even if the court improperly excluded the statements, any error was harmless due to the overwhelming evidence of Cotner's guilt.

Upon our review, we find that, on this limited record, the district court did not err in sustaining the objection to Cotner's testimony about a question he alleges the victim asked him. And that even if the district court erred in sustaining the objection to Cotner's testimony about the victim's greeting, which was not stricken from the record, this error was harmless. We therefore affirm Cotner's conviction.

## I. Background Facts and Proceedings.

On October 7, 2023, after 1:00 a.m., the victim was walking home and went down an alley between a bar and her apartment building. She saw two men in the alley: one looked like a security guard, who went inside when she walked by, and the other was Cotner. Cotner approached her in the alley and began to talk to her. According to the victim, he asked what she was doing and she responded that she was "going home." He stepped in front of her and prevented her from continuing her walk home. Again, he asked what she was "trying to do." She responded, "Nothing. I was going home."

Then, he grabbed her by the waist and arms and tried to kiss her. She kneed him to get away and said, "No." He began to strangle her, and she got an arm free and punched him in the face. Then, he grabbed her by the neck and dragged her to the side of the alley near a garage, throwing her to her knees. She tried to call 911, and he took her phone. As she called out for help, he covered her mouth and said, "Shut the fuck up, or else." He then pulled down her pants and sexually assaulted her. After, he took out her phone and gestured for her to unlock it. He put his contact information in her phone and returned it to her.

She walked away to her apartment and called a friend to come over. Her friend testified that the victim was hysterical, looked visibly upset, and her hand looked like she had hit something. The friend called 911. When law enforcement arrived, they observed that the victim was "crying, hyperventilating, and she was talking very, very fast." They also noticed that she had a "significant hand wound." She had cuts on her hands and bruises on her neck and knees. She also gave law enforcement the clothes she had been wearing. Then, she went to the hospital for an exam with a Sexual

Assault Nurse Examiner. During the exam, the nurse documented her injuries and took photographs.

Law enforcement processed the area where the victim was assaulted. Officers found one of her earbuds, the earbud case, and a ring that she was wearing at the time of the assault and photographed them at the scene. The ring she had been wearing had blood on it. Eventually law enforcement got the sweatshirt Cotner had worn that night, and it had a blood stain on it.

At the January 2025 trial, Cotner testified about the events, and the State objected to his testimony about what the victim said. The following exchange occurred during Cotner's direct examination:

> Q. When she walked by, did you have a conversation with her? Or you can tell me what happened after she walked by. A. She walked past. She kind of looked back in my direction. I said, "Hi." She said, "Hi," back.
>
> STATE COUNSEL: Objection, Your Honor; hearsay.
>
> DEFENSE COUNSEL: I'm not offering it for proof of the matter necessarily, Your Honor.
>
> THE COURT: I'm going to sustain the objection. You can only talk about what you said. You can't report what she said.
>
> COTNER: Okay.
>
> THE COURT: Unless there's some exception that your counsel implies, and we would have to decide that.
>
> COTNER: Okay.
>
> DEFENSE COUNSEL: May we approach?
>
> THE COURT: You may.
>
> (A bench conference was held.)

The State never moved to strike "Hi" from the record nor did the district court instruct the jury to disregard that portion of the testimony.

A later hearsay objection was also sustained during Cotner's testimony:

> Q. And then what happened?  A. She looks at me, and she said, "Are you going to stick it in?"
>
> STATE COUNSEL: Objection, Your Honor; hearsay.
>
> THE COURT: Objection sustained.  The jury will disregard the last answer.

After hearing the evidence, including the victim's testimony, the jury found Cotner guilty, and the district court sentenced him to an indeterminate twenty-five-year prison sentence.  Cotner appeals.

## II.  Error Preservation.

First, we must address the State's challenge to whether Cotner preserved error on his arguments.  "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."  *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) (citation omitted).  Under Iowa Rule of Evidence 5.103(a)–(b):

> a. *Preserving a claim of error.*  A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and:
>
> . . . .
>
> (2) If the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.

5

b. *Not needing to renew an objection or offer of proof.* Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal.

The State argues Cotner did not preserve error on his arguments that (1) the district court erred in its second hearsay ruling on Cotner's testimony,[1] (2) the district court effectively prevented Cotner from introducing any other statements of the victim, and (3) the district court limited Cotner's defense, thus depriving him of due process and a fair trial. On appeal, Cotner argues that the hearsay rules should not apply to criminal defendants when they attempt to testify about what a victim said and that the district court's ruling was a complete exclusion of any statement the victim may have said to Cotner.

The State objected on hearsay grounds after Cotner testified that the victim asked: "Are you going to stick it in?" The court sustained the objection. After that, the testimony continued, and Cotner failed to make any response to the court about the objection or what hearsay exceptions would apply. Further, he did not make any offer of proof related to any other statements he wanted to offer. On appeal, Cotner claims error was preserved because the district court had already categorically ruled that his testimony about the victim's statements was hearsay. But we have no record to verify if this is so. Instead, the record reflects that the district court said, "Unless there's some exception . . . we would have to decide that." But as it pertains to error preservation, because the court ruled on the objection, we find that the issue of whether the question is hearsay is preserved for our review.

---

[1] The State concedes that Cotner preserved error of the ruling on the State's objection to "Hi."

Next, we must address the statements not offered by Cotner. On appeal, Cotner alleges that he could not fully testify about the victim's alleged statements during the encounter. But we are unaware of the substance of the evidence that was to be offered as there was no offer of proof that detailed the proposed testimony. "Error on appeal cannot be predicated on a ruling excluding evidence unless either the party that is offering the evidence informs the court of its substance by an offer of proof, or the substance was apparent from the context." *State v. Lacey*, 968 N.W.2d 792, 806 (Iowa 2021) (cleaned up); *see also State v. Lange*, 531 N.W.2d 108, 114 (Iowa 1995) ("This court considers offers of proof so important that we require them to preserve error.").

Our review of the record shows that Cotner made no offer of proof as to what these unoffered victim statements would have been. *See Lacey*, 968 N.W.2d at 806 ("Without an offer of proof, we can do no more than speculate about the substance of [the defendant's] proposed testimony."). Cotner counters that he did not need to renew a motion when the district court had already categorically ruled that statements from the victim were hearsay. *See* Iowa R. Evid. 5.103(b) ("Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal."). Even if he believed the district court would not allow them in, he was required to make an offer of proof to preserve the issues for appeal. *See Lacey*, 968 N.W.2d at 806 (finding error not preserved when the court could not discern from the record what the substance of the proposed testimony would have been). We find error was not preserved on the issue of Cotner's testimony about other statements he claims the victim made to him.

Finally, we consider the State's challenge to his constitutional claims that the district court limited his defense and thus deprived him of due process and a fair trial. Cotner asserts that "his invocation of constitutional provisions is limited solely to the question of whether *this Court* must analyze the prejudice of the District Court's ruling through a constitutional or nonconstitutional lens." Still, to preserve the due-process and fair-trial constitutional arguments, Cotner had to raise them before the district court. *See State v. Hamilton*, 309 N.W.2d 471, 476 (Iowa 1981) ("Matters not raised before the trial court cannot be raised for the first time on appeal, including constitutional issues." (citation omitted)). Because Cotner did not raise these arguments before the district court, we cannot address them here.

We turn to Cotner's preserved claims.

## III. Standard of Review.

"Although we generally review a court's decision to admit or exclude evidence for an abuse of discretion, we review a hearsay claim for correction of errors at law." *State v. Neitzel*, 801 N.W.2d 612, 621 (Iowa Ct. App. 2011). Our review is for correction of legal error because "a district court has no discretion to admit hearsay in the absence of a provision providing for it." *State v. Veverka*, 938 N.W.2d 197, 202 (Iowa 2020) (cleaned up).

We will not reverse a ruling improperly excluding hearsay evidence unless it is prejudicial. *See* Iowa R. Evid. 5.103(a). "When nonconstitutional error occurs, we employ a harmless error analysis." *State v. Russell*, 893 N.W.2d 307, 314 (Iowa 2017). "We presume prejudice and reverse unless the record affirmatively establishes otherwise." *Id.*

8

## IV. Analysis.

Hearsay evidence is a statement "[t]he declarant does not make while testifying at the current trial or hearing" that "[a] party offers into evidence to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(c). Hearsay is inadmissible unless it falls within an exception provided by the rules. *See* Iowa R. Evid. 5.802. First, it must be determined whether the declaration is either not a statement or not offered to prove the truth of the matter asserted. *See State v. Dullard*, 668 N.W.2d 585, 589–90 (Iowa 2003). A statement is defined as an "(1) oral assertion or written assertion; or (2) nonverbal conduct, if intended as an assertion." Iowa R. Evid. 5.801(a) (cleaned up).

"A great many out-of-court utterances fall within such categories as greetings, pleasantries, expressions of gratitude, courtesies, *questions*, offers, instructions, warnings, exclamations, expressions of joy, annoyance, or other emotion, etc." *State v. Rawlings*, 402 N.W.2d 406, 409 (Iowa 1987) (cleaned up). "Such utterances are not intentional expressions of facts or opinions. They are not assertions, at least for purposes of the hearsay rule. Thus, they are not hearsay." *Id.* (citation omitted). But "[i]mplied assertions from speech intended as communication clearly come within the definition of a statement under rule 5.801(a)(1)." *Dullard*, 668 N.W.2d at 594–95. In *Dullard*, the court explained, "we do not believe indirect or unintentional assertions in speech are reliable enough to avoid the hearsay rule. We think the best approach is to evaluate the relevant assertion in the context of the purpose for which the evidence is offered." *Id.* at 595 (cleaned up). "Under that approach, some utterances that do not appear to be hearsay on their face still qualify as hearsay if they are offered to prove the truth of an implied

assertion." *State v. Webb*, No. 23-0969, 2024 WL 4368784, at \*6 (Iowa Ct. App. Oct. 2, 2024).

**A. Cotner's Introduction of the Victim's Greeting**. First, we consider if the district court erred in prohibiting Cotner from introducing the victim's declaration of "Hi." After the State objected, Cotner's counsel argued "I'm not offering it for proof of the matter necessarily, Your Honor." Likely anticipating more testimony about the conversation, the district court sustained the objection and told Cotner, "You can only talk about what you said. You can't report what she said." The district court continued, "Unless there's some exception that your counsel implies, and we would have to decide that." An unreported bench conference was held and the testimony continued without further discussion of what the victim said until the second hearsay objection. On our review, the fact that the district court did not strike the statement from the record suggests that the real issue related to what might follow if the objection had been overruled.

Cotner argues that the declaration "Hi," was admissible as a greeting. We agree that if the statement is simply a greeting and nothing more, there would be no reason to exclude it as hearsay, which even the State generally acknowledged. *See Rawlings*, 402 N.W.2d at 409. Yet the State counters that the introduction of the victim's statement was to prove an implied assertion that the victim did not ignore him and engaged in a conversation with Cotner. That theme appeared later in Cotner's testimony when he claimed that they had a "pleasant conversation." But even if we consider the "context of the purpose" for which Cotner offered the statement, *Dullard*, 668 N.W.2d at 595, and we agree with the State that Cotner offered this assertion to prove that the victim wanted to engage in conversation with him, we still have no record of the reasons for the offer from Cotner's perspective. So, in the end,

10

whether it was hearsay or not, it remained in the record and, as described in more detail below, Cotner was not prejudiced by the district court's ruling.

**B. Cotner's Introduction of the Victim's Question.** The second hearsay objection related to the victim's alleged question to Cotner, "Are you going to stick it in?" While not all questions are considered hearsay, *see Rawlings*, 402 N.W.2d at 409, those that contain implied assertions are considered statements and when offered to prove the truth of the matter therein, they must be excluded unless the rules provide otherwise, *see Dullard*, 668 N.W.2d at 595; *see also* Iowa R. Evid. 5.802.

At trial, Cotner's defense was that this was a consensual encounter. As Cotner notes on appeal, the question could serve "as an implied assertion of consent or invitation to engage in a sexual act." Considering "the context of the purpose for which the evidence is offered," *Dullard*, 668 N.W.2d at 595, we find the statement to be an implied assertion and that Cotner offered it to prove the truth of the statement. Thus, we find the court did not err in finding that this question was hearsay.

After we determine that a declaration is hearsay, we must evaluate if any exceptions or exclusions apply under the rules. *See* Iowa R. Evid. 5.802. Cotner argues that the statement should have been admissible for impeachment purposes and to explain his responsive conduct. The record shows that Cotner offered neither of these explanations to the trial court. To the extent they are preserved, we address them here.

1. *Impeachment.* "A prior inconsistent out-of-court statement offered for impeachment purposes falls outside of the definition of hearsay." *State v. Nance*, 533 N.W.2d 557, 561 (Iowa 1995). Evidence only offered to impeach cannot be considered as substantive evidence. *See Brooks v. Holtz*, 661

N.W.2d 526, 531 (Iowa 2003). "For an out-of-court statement to be admissible as impeachment, there must be a contradictory statement by the witness." *State v. Swift*, 955 N.W.2d 876, 882 (Iowa 2021); *see also State v. Oshinbanjo*, 361 N.W.2d 318, 322 (Iowa Ct. App. 1984) ("A showing of a proper foundation is a prerequisite to a successful appeal on the grounds that the trial court excluded a prior inconsistent statement.").

Cotner argues that the question was admissible to impeach the victim's testimony that "she did not engage Cotner in conversation or attempt to act friendly toward him." Cotner relies in part on *State v. Gilmore*, 259 N.W.2d 846 (Iowa 1977), for the ability to use the statements to attack the victim's testimony. *Gilmore* lays out the first test for determining if a statement is admissible as a prior inconsistent statement:

> The laying of a proper foundation is necessary as a warning to the witness. The witness is warned the statement is going to be used so that he can prepare to prove he did not make it or so that he can prepare to explain it away if he admits he made it. The use of a proper foundation is a prerequisite in most jurisdictions to the use of the statement. . . .
>
> It is usually necessary for the questioner to ask foundation questions which specify some details as to the occasion of the remarks or written statement.

259 N.W.2d at 853.

Here, Cotner attempted to introduce the victim's statements during his own direct testimony, not to impeach the victim's statements that he garnered during his cross-examination of the victim. Thus, he never asked questions to give the victim a warning, and he never laid a foundation for these statements to impeach the victim's credibility.

Generally, Cotner argues that the exclusion of the victim's responses on hearsay grounds operated to silence him from describing the other side of

their conversation. To emphasize his position, he points to *State v. Wycoff*, 255 N.W.2d 116, 118 (Iowa 1977), where the court observed, "We think it would be a strange doctrine indeed, and one to which we cannot subscribe, that would permit one side to show the content of a conversation and then be able to silence the other side about the conversation, on the ground of hearsay." But *Wycoff* applies when a party attempts to contradict and discredit an adverse witness relating to an inconsistent statement, which Cotner failed to do here. *Id.*; *accord State v. Odem*, 322 N.W.2d 43, 45 (Iowa 1982). As Cotner failed to lay the proper foundation in the first test, the district court properly sustained the hearsay objection.

2. *Responsive Conduct.* "[W]hen the out-of-court statement is used to prove something other than the truth of the matter asserted, such as responsive conduct, the statement may be admissible as nonhearsay." *State v. Dessinger*, 958 N.W.2d 590, 603 (Iowa 2021). Cotner argues that this question—"Are you going to stick it in?"—could explain Cotner's responsive conduct of putting his number into the victim's phone because they both wanted a future encounter. He testified, "I gave her my number, my phone number." This interaction was later clarified in his testimony:

> Q. Before you went back into the H-Bar, did you—did you have any more contact with [the victim], other than what you've described? A. When I was walking back toward the front entrance, she kind of came back up to me and said she wanted to make sure she got my number.

> Q. You don't have to tell me—I'm not asking you to tell me what she said, but at some point did you give her your telephone number? A. Yes.

> Q. Did you put—create a Contact in her phone with your name and your telephone number? A. No.

> Q. Who did that? A. [The victim] did.

Q. Did she do that after she asked you for your number? A. Yes. She said she wanted to make sure she had it right.

The words "Are you going to stick it in?" do not explain Cotner's responsive conduct of giving the victim his number. *Cf. State v. Ennenga*, No. 14-1579, 2015 WL 9450656, at *4–5 (Iowa Ct. App. Dec. 23, 2015) (finding a credit card company's statements about where a card was used was not hearsay because it explained the responsive conduct of the card holder who then went to those stores to inquire about the credit card use). Instead, we find this was merely an attempt by Cotner "to put before the fact finder inadmissible evidence" and was not relevant to the purpose he now indicates he had for offering the question. *See Dessinger*, 958 N.W.2d at 603 (citation omitted).

Because no exceptions or exclusions applied, the district court did not err in sustaining the objections to Cotner's testimony about what the victim said to him.

**C. Harmless Error.** We find that the district court did not err in excluding the testimony about statements from the victim, but even if the district court did improperly exclude the statements, the error may not be reversible. Under the harmless error analysis, the test is whether it sufficiently appears Cotner's rights "have been injuriously affected or that [he] has suffered a miscarriage of justice." *State v. Traywick*, 468 N.W.2d 452, 454–55 (Iowa 1991) (citation omitted).

Upon our review of the record as a whole, Cotner's offering of the victim's out-of-court statements to support his consent theory would not have provided much support to his defense. We begin by noting that despite the district court sustaining the objection to Cotner's offering of the victim saying "Hi," the State never moved to strike the phrase from the record. *See*

*State v. Reese*, 259 N.W.2d 771, 775 (Iowa 1977) (explaining that in order for an objection to be adequate when it is made after an answer to a question is in the record, the objecting party must make a motion to strike and ask to have the objection precede the answer or offer an excuse for delay in objecting). Further, later in his testimony, without objection from the State, Cotner described what happened as the victim walked by stating, "She walked past. She kind of looked back in my direction. I said, 'Hi.' She said, 'Hi,' back." As the greeting remained a part of the record, any error by the district court sustaining the objection was harmless.

Additionally, throughout his testimony, Cotner provided his own description of the encounter as consensual and detailed his version of what the victim said without objection from the State. During Cotner's testimony, he explained that the victim came back to him as he was walking back to the bar. His counsel asked, "Did she do that after she asked you for your number?" And he replied, "Yes. She said she wanted to make sure she had it right." During cross-examination by the State, Cotner was asked:

> Q. She didn't tell you where she lived? A. She did, yeah.
>
> Q. She didn't invite you up to her apartment, though; is that right? A. She did.
>
> Q. Your testimony is she invited you up to her apartment. A. Yes.
>
> Q. Then why would you say she voluntarily moved you over to the garage area and began getting on her knees as if she was going to give you a blowjob? A. I didn't say that.
>
> Q. Okay. So now your testimony is that she invited you to her apartment. A. She did.

15

On his re-direct testimony, Cotner explained

Q. And what did she say, now that the State has opened the door?
A. She told me she was going home and if I wanted to come.

Q. And what did you say?

. . . .

A. I told her, "No, I'm staying at the bar because I paid to get in."

Q. Okay. And what did she say in response to that?  A. Pretty much just started—she said she liked my dreadlocks and just started, kind of, like, making out.

Overall, given the State's properly admitted evidence: the victim's testimony about the assault, the pictures and testimony from others about her injuries, the testimony from law enforcement about the scene and the victim's actions, and the testimony from the Sexual Assault Nurse Examiner about the exam, we conclude that any error in exclusion of the out-of-court statements was harmless beyond a reasonable doubt.

**V. Conclusion.**

Because Cotner provided no exceptions to the rule against hearsay that would apply to the statements he offered at trial, the district court did not err in excluding the statements as hearsay.  Likewise, Cotner cannot show prejudice even if the statements were improperly excluded, making the error harmless because of the overwhelming evidence of his guilt.  We affirm.

**AFFIRMED.**